P. 1338-38 Arthur Lavin, et al. v. Jon Husted, Q.J. Oral Argument of the Exhibition and Preside, Mr. Jon Husted, for the Apostolate. May it please the Court, and thank you for the privilege of presenting Oral Argument today. Your Honors, as an attorney that has done work for defense in civil rights cases for many years, but then also does work for the plaintiffs in particular the last several years, we have been to the rodeo before where you eventually prevail on behalf of a plaintiff in a fee-shifting case and you apply for fees, and sometimes the Court awards most of what you want. I don't think I've ever seen a Court ever award everything that you're looking for and that you've applied for. And then what you typically do is just accept the result and move forward. We've been in situations where there might be a 10%, 15%, 20%, 25% trimming of requested fees. But you accept the result because it's an abuse of discretion standard and you need to move forward if you're doing fee-shifting work and take those resources and invest them in the next case. So it was really only extraordinary circumstances that bring us to the point where we would bring an appeal in a fee-shifting case because the issues of abuse of discretion so pervade the District Court's opinion here, the issues of clearly erroneous factual findings that are supported nowhere in the record, improper application of law, and using an erroneous legal standard that we felt that we had no choice but to pursue this matter on behalf of Drs. Lavin and the other plaintiffs, who, as the Court knows, are the ones who are entitled to the legal fees as a matter of law. In particular, on the factual findings side, there were factual determinations that displayed non-judicial neutrality, let's put it that way, toward the plaintiffs and their counsel. There were statements that there was no evidence in the record that the plaintiffs had actually ever intended or wanted to make a contribution. That was flatly contradicted by the record and the declarations from Drs. Lavin and some of the other plaintiffs in this case, by the interrogatories, by the discovery. The record was replete with those individuals expressing their desire to make contributions to then-Attorney General Richard Cordray's campaign and then be able, subsequently, to various county prosecutors. The accusation that the suit was simply brought to garner overstated fees and not for a legitimate purpose, nowhere in the record can any support be found for that whatsoever. And even if that were true, as we pointed out in our brief, there's controlling case law that says it's totally irrelevant to the analysis. The fact is that these plaintiffs are prevailing parties and had to prevail through multiple rounds of litigation. They had to litigate the case before the magistrate judge, where there was a report and recommendation in their favor, which was then rejected on preliminary injunction before the district court judge, and then had to litigate permanent injunction and summary judgment before the district court, and then that was rejected and then eventually came to this court and finally obtained the relief that they sought, going back to the district court for entry of judgment and the fee application. So we've documented them more thoroughly in our brief, but there are factual findings that are completely incorrect. There's misguided application of law and incorrect application of law, and in particular I would draw the court's attention to the defendant's status as a governmental entity. Now, if that is going to be the standard under which fee applications are more heavily scrutinized, which is what the court repeatedly says it's doing throughout its opinion, then we're in trouble because there's no First Amendment case in which the government is not going to be a defendant. By definition, Section 1983 cases are about state action. First Amendment cases are about state action. And that's why Congress, in adopting Section 1988, the fee shifting statute, laid out information in its report saying these cases are to be compared to cases like antitrust cases and other cases of similar complexity. Are there any findings made by the district court that you think were within its discretion? Are you saying everything that the district court determined is erroneous? No. Actually, Your Honor, what we did was we conceded, or we didn't contest, some of the issues that came out of the magistrate judge's opinion with regard to fees. And so, for example, they were questioning the fact that I had stayed at the Westin across the street from this court before oral argument in this case and the charge for that room, and so that was cut. We voluntarily conceded that. I'm curious about the magistrate judge's $423.75. That's pretty high for the magistrate. It was high, and I didn't like it, and I didn't like paying it out of pocket, as we do, with the risk of loss. But I needed to be there the night before oral argument because of my schedule and use that room to prepare and walked over and argued the case. The Westin was charging? We couldn't get a room anywhere else in downtown that weekend, so my paralegal told me so. But we conceded. Highway robbery. Well, and by the way, I hope one of the things... Perhaps, you know, we benefit from government rights. That's right. Well, one of the things I'm hoping this court will do is arrange a rate for the people who argue before the court at the Westin because it's awfully convenient. Maybe that will be the one good thing that comes out of oral argument today. But one of the things... So we conceded that. I would count on that. That's right. There were some other findings that the magistrate judge made. I think there was a 25% cut in appellate hours. We just conceded that because we're mindful of this court's admonition, the Supreme Court's admonition, that the fee litigation shouldn't turn into a second major-blown litigation. So we just, as the famous popular song says nowadays, we just let it go. We just let it go. And you hope that you get a result out of the district court that is close to the magistrate judge's ruling. But the reason that we objected, the main reason we objected out of the magistrate judge's ruling, was that there was this finding that all of the work preparing the complaint, researching the legislative history of this 30-year-old statute, going into dusty historic facilities and trying to figure out what the rationale was for it, researching the law, drafting the complaint, drafting the preliminary injunction, it was just about $100,000 of legal work under our standard rates rejected, not paid. Regardless of, I mean, the legal point, you know, you may be entirely correct about, but I understand that, you know, some discovery was required in this case at a later point. But I'm, and I understand you didn't get the result you had hoped for until many stages of the litigation passed the initial one. But it seems odd to me, given the nature of the challenge here, that so much preliminary work would have been required. It seems to me like most of the preliminary work would be, would really have involved a perusal of the case law. And your firm does a lot of this work, so you weren't starting from the get-go in terms of having no knowledge. So I'm just a little surprised. My question goes not to your entitlement to fees prior to the filing of the lawsuit, the signing of the contingency arrangement, whatever, but rather to their amount. The quantity, yeah. And that's a perfectly fair point, Your Honor, and I have to tell you that knowing what I know now about what the amount of work that was required by challenging the statute, I might have had second thoughts about taking it on a pure fee-shifting basis because it required an enormous amount of work. Trying to get the legislative history to understand the rationale behind the statute was a very difficult undertaking logistically. We have to anticipate defenses when you're doing this kind of work. You can't just say, all right, I think I have a good argument as to why this is going to... Even because of the age of the statute? The age of the statute, but then also anticipating defenses because once the government offers a rationale, a significant government interest in the particular regulation, you have to be able to rebut that. You have to be able to show that it's not correct, and they tried to offer any number of rationales, which we were able to rebut by virtue of having done the work that we did. For example, the court wouldn't take for granted, the magistrate judge explicitly rejected our claim that this statute broadly affected anyone with an ownership interest, even though that's what the plain language of the statute said, which would include shareholders of publicly traded corporations because the magistrate judge correctly, I think, said, look, I can't assume that. You have to show me evidence of that. I hate to cut you off from answering the question that I ask, but I'm going to do it anyway. Okay. All right. And your time's up. I assume you reserved some time for rebuttal. Yes, six minutes for rebuttal. Thank you. Appreciate it. Thank you. Good morning, Your Honors and Mr. Chandra, and may it please the court. Chris Armstrong from the Attorney General's Office for Secretary of State Husted. I want to address something that Mr. Chandra addressed at the beginning of his oral argument. He talked about the extraordinariness of this case, and I think it's worth noting that the most, if not the only, extraordinary thing about this particular case is the amount of fees that the plaintiff has requested vis-a-vis the difficulty of the case. The amici in this case have suggested that they are concerned that this case might set precedential value for future cases and that it might drive down fees in this area. This case is an outlier. This case is not going to bring about the apocalypse in terms of the plaintiff's fees. But let's assume that there is some shock value associated with the fees originally requested. The most notable thing about this case probably for an appellate court, at least speaking for myself, is the fact that there is reliance in cutting the fees not simply on the excessiveness of the fee but on some factors that are arguably impermissible considerations in evaluating a fee award. The most striking thing about your brief is that you completely don't address those at all. You do not undertake to defend the district court's use of the factors that the appellant has characterized as impermissible. And for us to endorse, considerate, if we determine that there were impermissible considerations, impermissible factors, the appellate court concern would be endorsing the use of those even if the court shared a certain shock relating to the amount of the original fee request. How would you address, since your brief doesn't talk about it at all, would you seek to defend the use of the factors that the appellant argues are impermissible or how would you justify our somehow blessing their use? I'm not sure we are an entity that bestows blessings but approves. Thank you, Your Honor. My response to that would be no. The Secretary, of course, would not endorse the use of those impermissible factors to the extent that they are impermissible. But I think the response would be if you look at Judge Nugent's opinion, Judge Nugent clearly was frustrated. You look at his footnotes. He noted that he had poured over the over 121-page submission that failed to add, you know, hour totals and things like that literally for weeks in the judge's words. And I think he did use his opinion to vent some of those frustrations. But I think if you look closely at... It's usually not a bad idea, not a good idea for court to vent. I think that's perhaps true, Your Honor. But I think if you scrutinize Judge Nugent's opinion, you will see that he does not state anywhere in the opinion, I am reducing fees that should not be reduced for any other reason because, for example, the defendant is a government officer. He is saying, here is the rule. The rule says that fees should not create a windfall for the plaintiff's attorney. The rule is that the hourly rate should be sufficient to incentivize competent counsel to take this case. And I am therefore, because the defendant is a government actor, I am going to very carefully apply the rules that should apply in every case. But you kind of have to look into his mind to do that. It's pretty hard to divine that from the written words. And that poses a problem in an appellate context. I understand that, Your Honor. And what I would only suggest is that it's... I think if you look at the judge's opinion, each of the deductions that he made were based on a reason that is a reason other than the defendant is a government officer or some of those other reasons that the plaintiffs have raised. It's somewhat shocking, though, that the magistrate judge recommended roughly $455,000. Judge Nugent ends up with $129,000. That's what I think they calculated, a 70% haircut from the magistrate judge's recommendation. That sort of gets your attention, doesn't it? All of the numbers in this case grab one's attention. And I think there may be a little bit of an anchoring effect that goes on at the initial stage with respect to the number that was thrown out originally by the plaintiffs that may be what infected the magistrate's opinion. I think the question this court needs to ultimately ask is what is a reasonable attorney's fee for the case at hand? And I would actually put a gloss on that and say, is the ultimate number that Judge Nugent obtained an unreasonable, a clearly erroneous number? Has he abused his discretion? The way the attorney's fee system is set up under Section 1988, it places a lot of discretion and power with the district judge. Judge Nugent, as opposed to the magistrate judge, was the judicial officer who was closest to the case and who knew best what had happened, what discovery was relevant, and what was sort of beyond the beyond in this case. Did he depart from the Lodestar hourly rate? Judge Nugent first calculated the Lodestar. He reduced the hourly rates from what the plaintiffs had sought to a reasonable hourly rate. He then reduced and cut some of the requested hours, including hours for travel, hours for discovery. Hours prior to signing of the contingency plan. Correct, Your Honor. Correct. And he then applied the Johnson factors to reduce the Lodestar amount by an additional 35%. He did that based on inefficient block billing. He did that based on there was some rounding that had happened. Also, this was sort of not a complicated case. Exactly, Your Honor. It's kind of strange because he got reversed by this court. Now, if it's so simple, how could he rule one way when he was wrong? I think this is a case in which there were fairly basic arguments on each side. And those arguments, I think the case is simple in the sense that, not that the answer is obvious or else we wouldn't have been here in the first place, but simple in the sense that there are clear arguments on each side. Those arguments were made repeatedly at multiple stages. First, the preliminary injunction. You can't fault anyone for that, I mean, if you're the plaintiff, given the necessity of repeating the argument over and over again until you finally got the appellate court to buy it. Absolutely, Your Honor. The fact that the argument was repeated is not the problem. The problem is that at every stage, the briefs were rewritten, revised, re-researched, and in a typical case, I think, in the judge's opinion. That would best be described as sort of a repetition of effort. Exactly. The arguments at summary judgment should not have been all that different from the arguments at the preliminary injunction. The arguments on appeal should not have been all that different from the arguments at the summary judgment. What about shifting gears just a little bit? One of the points that the plaintiff makes is that you initiated, the Secretary initiated a good deal of the discovery. Any quibble about that? Well, the Secretary obviously conducted some discovery. I don't believe the Secretary initiated the lion's share of the discovery by any stretch. I think there was quite a bit of third-party discovery that was attempted by the plaintiffs. Can you sort of describe for me, in just a couple of sentences generally, I don't question the premise that some discovery is necessary, may be necessary in a case of this type, but it may be difficult litigation, but it's not complex litigation. And so I'm puzzled at the scope of the discovery, and I'm wondering if you could sort of describe in two or three sentences the nature of it from your perspective. I can, Your Honor. And to be clear, I was not personally involved in the previous iteration of the case. I'm sort of coming in at this stage. But my understanding from reading the documents is that this was a facial challenge to a statute that barred certain contributions to certain officeholders by people who owned a certain percentage of stock in Medicaid providers. I believe there was some third-party discovery that was attempted in order to, there was some discovery that was attempted in order to determine whether the current Attorney General, whose Assistant Attorney Generals were litigating the case, had received such improper contributions, or that seemed, at least from Judge Newton's perspective, to be the direction that that discovery was going. That was quashed. There was also a third-party discovery, I believe, involving major retailers who may have been Medicaid providers. In the judge's opinion, it was quite far afield. Well, I mean, there's an over-breadth challenge. Yes. And, you know, so, I mean, some discoveries, you know, I mean, the plaintiff needs to make some showings there, so there's some obligation on the part of the plaintiff that would require discovery. Certainly there is, you know, to be some discovery. This is a case in which I don't have the number of discovery hours at my fingertips, but the total number of hours sought were 1,898 hours, almost 1,900 hours. That's not just discovery, that's everything. No, that's everything, but that's a good year at a big law firm. Wasn't it about 270 hours? I think that's correct, Judge Seiler. That number does jump out at me. How much discovery did the state make? I don't have that answer, Your Honor. I'm not sure that's in the record. Obviously we weren't required to submit billing, and I wasn't involved, so I just don't know. But the point is that the state might have come back, countered that with the plaintiff's request to say, well, it just took us this amount of time. You don't know that. We just don't have that information, Your Honor. I'm sorry. But the larger point with respect to the discovery is that, again, Judge Nugent was in the best position to determine what was reasonable and what was unreasonable, and he painstakingly reviewed the bill and made that determination and determined that this case was over-litigated. With respect to the discovery and with respect to the appellate process, I think $250,000 was requested for the appeal. That's the price of the appeal. If everybody pays that, nobody would come here, I think. Exactly, Your Honor. With respect to the process that Judge Nugent undertook, he first determined a reasonable hourly rate. He did that by looking to a publication that district courts frequently use, the Ohio State Bar Association Economics of Law Practice. He didn't let that median rate dictate his rate, but he did determine that in this case, it was reasonable to look at what civil lawyers in the state of Ohio and even adding a premium for the location in Cleveland, Ohio, were making. I don't necessarily fault him for using that as one source, but in these types of cases, isn't it more common to look at what other courts have awarded to civil rights plaintiffs' lawyers in similar cases and to affidavits from such lawyers about their usual fees and that sort of thing? Absolutely. It is common, and Judge Nugent considered that evidence, as well as noted in his opinion, and determined that the rates that he selected were adequate to incentivize competent and experienced counsel to take this case. Although those rates were a lot less than the affidavits, weren't they? That's correct, Your Honor, yes. He seems to have relied much more on the Bar Survey than he did on any evidence that is particularly pertinent to lawyers in these types of cases. He appears to have done that, Your Honor. He appears to have relied on that, but his opinion is clear that he considered all the evidence that was put forward. Well, he says that. I guess what bothers me a little bit is just his general statements. He says, you know, he's fine with preference of awarding fees, quote, on behalf of plaintiffs who could not otherwise afford to pay an attorney, but he's against fees for, quote, atypical civil rights plaintiffs, like these doctors who have loads of money can pay on their own. But those are irrelevant considerations under the law. Correct, but I don't believe he indicates that those considerations impacted his decision in this case. I think he may be saying in other cases courts have been less exacting in terms of their application of the standard that clearly applies. I think what he's saying is that the rule is the rule, and in other cases courts have let people get away with more than what the rule allows, but here I'm going to apply the rule. And so turning to, my time grows short, turning to a question that Your Honor has asked Mr. Chandra regarding the reduction of fees for prior to, the time period prior to the entry into the written contingency fee agreement. The Secretary's position, and this was adopted by the magistrate and the district court, is that Rule 1.05 of the Rules of Professional Conduct requires that contingency fees be in writing. Now, obviously it makes sense that this, you know, the thrust of the rule or perhaps the reason for the rule goes to fees that would result in monetary awards. But that's not what the rule, the rule doesn't only apply to those. The rule applies to all contingency fee agreements. So this contingency, if this agreement was contingent, it must have been in writing. Is this a contingency fee agreement? It should be, Your Honor. Not in the usual way, is it? It's not in the sense of the plaintiff is seeking a monetary award and the plaintiff's lawyer gets 30 percent or 40 percent. But it is in that the plaintiff's attorney's entitlement to fees is contingent on the outcome. They are only entitled to fees if they succeed. You know, I don't even know, I mean, what's the, why would you interpret that as requiring a contingency fee agreement in this type of case? I mean, the fee is contingent on whether the court awards fees and the amount, not on real, I mean, and that does depend on whether the plaintiff wins, but it just doesn't seem what the rule is intended for. I see that my time is up, so I'll answer briefly if that's okay. The Ohio rule requires that fees that are contingent must be in writing, and it also, and blanket, all contingent fees must be in writing. And it also requires that the nature and scope of the representation and the basis or rate of the fee be communicated to the client before or within a reasonable time after the representation is commenced. And I think that illustrates, in some ways, that portion of the rule illustrates the District Court's conclusion that prior to that agreement, the representation had not fully commenced. Thank you, Your Honors. Your Honors and Counsel, I'd like to rebut some of the particulars that were stated by opposing counsel, and I certainly respect him and the arguments that he's making, but they're more noteworthy by what wasn't mentioned. In 2009, the record will show, Judge Nugent, the District Court judge in this case, awarded me personally $400 an hour in a First Amendment case for work performed in 2006, I believe, through about 2009. In 2013, I was awarded for work in the years preceding $225 an hour by Judge Nugent. Now, I would submit to the Court, and I certainly know the amici have submitted to the Court, that if that's permissible, if discretion permits fees that vary not only from prior court orders, but also from the affidavits, and also from counsel's standard rate, then that turns a market analysis on its head, because no counsel enters a fee-shifting arrangement with any idea what their rate is, whatsoever. You can link this to the tension of the judge. We couldn't, because we had no idea he was going to slash the rate that hard. But you did tell him, well, in this previous case, you awarded me $400. Oh, we did. Yeah, that was part of the briefing. In fact, all of the prior court orders, including one affirmed by this Court in the Neoc case, was, I think, around $400 an hour. There may have been two affirmed along those lines in the last six, seven years or so. And so all of those were in front of the judge. Do you think that this is a contingency fee kind of case, that they say that you should have signed the first day, or whatever it is, under this rule? If it is, there's nothing in the rule that says when that agreement has to be signed. So it was complied with, if in fact that rule applies. But I don't agree that the rule applies. The rule has to do with percentage. Do you routinely comply just out of an abundance of cost? Oh, absolutely. Absolutely. And this isn't in the record, but I'm trying to understand what happened here. You'll see in the timing in the record that the agreement was finally signed just before we filed the complaint and the preliminary injunction motion. And I think probably what happened, I don't know for sure, was that I'm saying to myself as we're about to file it, hey, do we have everything in order? And then we did. You'll see in Dr. Lavin's supplemental declaration, he wasn't particularly concerned about it. You'll see in mine, I wasn't particularly concerned about it, because he and the other doctors knew what the drill was. They knew they weren't on the hook for fees personally in this matter. So it just wasn't a concern, and there was a personal relationship there. I know the other relief you seek, if we agreed with your position and think that there was an abuse of discretion and remand, you're requesting that, what, it be assigned to a different district judge? Now, that's an extraordinary request. What would justify that? It is, and we thought long and hard before even asking for it, because it is unusual. And the concern here is the language in the opinion that is personal toward counsel that seems to be questioning the integrity of counsel, that even the underlying case was taken on merely to garner overstated fees, which was, with all respect, just an outrageous accusation. The questioning of the plaintiff's motives in bringing the case, and then also this sort of continued expression of high regard and affection for the underlying statute itself. Replete throughout the opinion seems to be an unwillingness to acknowledge and salute at this court's decision on the merits, because there are at least two references, maybe more, and we cite them in our brief, again, trying to argue the rationale behind the statute. It was intended to protect against corruption. Well, this court rejected that argument completely. They couldn't possibly about that. The statute couldn't possibly be about that, because it was so crazily overbroad. So I think for those reasons, we think that this case fits in the authority, and there's a recent decision by this court that we cited in our notice of supplemental authority, applying the standard for assigning to a different judge, just to avoid the appearance of impropriety under circumstances such as these. So that's why we're asking. This lying case, or is that some other case? I'm sorry. I can't. The name doesn't come directly to the tip of my tongue, but it was a recently filed motion for judicial notice sometime in the last few weeks, Your Honor. I'm sorry, motion for notice of supplemental authority, filed in the last few weeks. Another example of this, one of the things that opposing counsel is saying, kind of effectively he's saying, don't pay any attention to the language in the opinion that expresses impermissible considerations, because those weren't really what the court was doing. Well, an example of there couldn't possibly be a justification for one of the things that the judge did was he took some of our fees, and the details are in our brief, he took some of our fees and then cut them by 50 percent, some of the hours, and then he took those same fees for that same work and reduced them by 100 percent of their original value. So now that represents 150 percent reduction, which essentially means that counsel and the plaintiffs are paying the Secretary of State for the privilege and honor of having beaten them as prevailing parties. That can't possibly be anything other than an abuse of discretion. That is just an impermissible application of existing law. Now, if it's true that the judge didn't rely on these impermissible considerations somehow, and somehow this court is supposed to divine that from the opinion, then why are those impermissible considerations repeated over and over and over again throughout the opinion from the governmental status of the defendant to, well, maybe these clients have money and could have brought this on their own, paying out of pocket. The court says we're going to specially apply scrutiny where there is a governmental defense. I think we understand it and we're familiar with the content of the opinion. We appreciate the arguments both of you have made and we'll consider the case carefully. Thank you. The court may call the next case.